UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JULIE A. SU, Acting Secretary of Labor,      :
United States Department of Labor,           :
                        Plaintiff,           :
v.                                           :
                                             :
BERKSHIRE NURSERY & SUPPLY CORP.             :
and JESUS FLORES,                            :
                        Defendants.          :
------------------------------------------------------------x

**OPINION AND ORDER**

23 CV 275 (VB)

Briccetti, J:

      Plaintiff, Acting Secretary of Labor Julie A. Su (the "Acting Secretary"), brings this action against defendants Berkshire Nursery and Supply Corp. ("Berkshire") and Jesus Flores, Berkshire's president, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  Plaintiff alleges defendants obstructed an investigation by the U.S. Department of Labor's Wage and Hour Division ("WHD") and retaliated or threatened to retaliate against employees for participating in the investigation.  (See Doc. #1 ("Compl.") ¶¶ 31–39).  On February 6, 2023, the Court entered a Consent Order for Preliminary Injunction in this matter. (Doc. #24 (the "Consent Order")).

      Before the Court is plaintiff's motion to hold defendants in civil contempt for their alleged noncompliance with the Consent Order, and for sanctions.  (Doc. #54).

      For the reasons set forth below, plaintiff's motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      Berkshire is a business located in Patterson, New York, that sells plants and gardening supplies in its retail nursery and also performs off-site construction and landscaping work for its

customers.  Flores is Berkshire's president and oversees its operations.  Plaintiff alleges both defendants are employers within the meaning of the FLSA.  See 29 U.S.C. § 203(d).

In November 2022, WHD commenced an investigation of defendants' labor and employment practices—in particular, their compliance with the FLSA and the H-2A provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (the "INA").[1]  In connection with this investigation, WHD visited Berkshire's worksite and provided defendants with information about the FLSA's anti-retaliation provisions.

According to plaintiff, shortly after the investigation commenced, defendants began intimidating their employees, specifically instructing them "to lie or not speak to WHD's investigators."  (Compl. ¶¶ 22–29).  Among other things, defendants allegedly threatened to physically harm employees or their families, to report employees to immigration authorities, and to refuse to re-hire employees in the future.  Because of these threats, plaintiff alleges, defendants' employees were "afraid to speak truthfully with" WHD investigators, "even by phone."  (Id. ¶ 30).

While the investigation was ongoing, then-Secretary of Labor Martin J. Walsh initiated this action on January 12, 2023.  Shortly thereafter, upon Walsh's application, the Court issued a temporary restraining order.  (Doc. #15 (the "TRO")).  In sum and substance, the TRO enjoined defendants from interfering with WHD's investigation or retaliating against employees for cooperating with WHD investigators.  Notably, the TRO also prohibited defendants from

---

[1]     The term "H-2A" refers to a visa program promulgated under the INA that allows nonimmigrant foreign workers to enter the United States to perform temporary, seasonal labor. H-2A visas provide admission specifically for individuals hired for temporary agricultural work. Temporary (Nonimmigrant) Workers:  H-2A Temporary Agricultural Workers, U.S.C.I.S. https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2a-temporary-agricultural-workers [https://perma.cc/T5DV-BMP8] (last visited Apr. 10, 2024).

terminating any employee without notifying WHD at least seven days in advance.  (Id. at ECF 3).[2]

Upon the expiration of the TRO, the parties stipulated to the terms of a preliminary injunction.  Accordingly, on February 6, 2023, the Court issued the Consent Order.  As with the TRO, the Consent Order requires defendants to give WHD notice at least seven days before terminating any employee.  (Consent Order at 2).

In the instant motion, plaintiff alleges that in June 2023, she received credible information indicating defendants had terminated an employee without giving advance notice, as required by the Consent Order.  Based on her review of defendants' payroll records, plaintiff determined an employee named Rogelio Ramirez Torres had stopped working for defendants no later than February 17, 2023.  (Doc. #57 ¶ 6).  Defense counsel subsequently informed plaintiff that defendants had also terminated an employee named Victor Alfaro Marquez.  (Id.).  Plaintiff alleges WHD did not receive prior notice of either termination, and defendants concede they failed to provide it.  (Doc. #44; see also Doc. #64 ¶¶ 5–6).

Also relevant to this motion, on December 19, 2023, defendants filed a temporary labor certification application, seeking H-2B non-agricultural foreign guestworkers[3] for the 2024 season.  (Doc. #57 ¶ 7; Doc. #57-1).  The 2024 season began on April 1, 2024, and ends on December 31, 2024.

---

[2]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing system.

[3]     H-2B visas are available to foreign guestworkers hired for non-agricultural labor or services.  Temporary (Nonimmigrant) Workers:  H-2B Non-Agricultural Workers, U.S.C.I.S., https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2b-temporary-non-agricultural-workers [https://perma.cc/6P3Q-T69K] (last visited Apr. 10, 2024).

**DISCUSSION**

I.      Standard of Review

"The Court's inherent power to hold a party in contempt is a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice."  Flaherty v. Filardi, 2009 WL 3762305, at *4 (S.D.N.Y. Nov. 10, 2009); see also Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").[4]

The Court may hold a party in civil contempt for failure to comply with an order if:  (i) the order with which the party failed to comply is "clear and unambiguous"; (ii) "proof of noncompliance is clear and convincing"; and (iii) "the party has not diligently attempted to comply [with the order] in a reasonable manner."  CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016).

The moving party need not establish that the noncompliance is, or was, willful.  Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 59 (2d Cir. 1984).  Indeed, "[t]he fact that the prohibited act was done inadvertently or in good faith . . . does not preclude a citation for civil contempt, for the sanction is remedial in nature."  Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 128 n.2 (2d Cir. 1979).

Furthermore, when, as here, the material facts are not in dispute, the Court need not hold an evidentiary hearing to resolve a contempt motion.  Grand v. Schwarz, 2018 WL 1583314, at *3 (S.D.N.Y. Mar. 27, 2018).

---

[4]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.    Civil Contempt

Plaintiff argues the Court should find defendants in contempt because they terminated two employees without giving prior notice to WHD, in violation of the Consent Order.

The Court agrees.

First, the Consent Order is clear and unambiguous.  A court order "is sufficiently clear and unambiguous if it leaves no doubt in the minds of those to whom it is addressed . . . precisely what acts are forbidden."  CBS Broad. Inc. v. FilmOn, Inc.com, 814 F.3d at 98.  In relevant part, the Consent Order enjoins defendants "during the pendency of this litigation" from "[t]erminating any employee without providing at least seven days notice to the Wage and Hour Division of the U.S. Department of Labor prior to any termination."  (Consent Order at ECF 1–2).  This language is not susceptible of more than one interpretation, and includes no exceptions, reservations, or qualifications.  Cf. Patsy's Italian Rest., Inc. v. Patsy's Inc., 676 F. App'x 24, 26 (2d Cir. 2017) (summary order) (affirming denial of a civil contempt motion because injunctive language was internally inconsistent).

Second, proof of defendants' noncompliance is clear and convincing because defendants concede they terminated Mr. Torres and Mr. Alfaro without notifying WHD beforehand.  (Doc. #44; Doc. #64 ¶¶ 5–6); see Weston Cap. Advisors, Inc. v. PT Bank Mutiara, Tbk, 667 F. App'x 15, 17 (2d Cir. 2016) (summary order).

Third, defendants have not demonstrated they exercised reasonable diligence in attempting to comply with the Consent Order.  When evaluating diligence, courts consider factors such as a party's demonstrated inability to comply with an order, see, e.g., Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995), and whether the party's actions "are based

5

on a good faith and reasonable interpretation of the court order," <u>Benthos Master Fund, Ltd. v. Etra</u>, 2022 WL 17819592, at *9 (S.D.N.Y. Dec. 20, 2022).

Defendants have not suggested they were unable to comply with the termination notice provision.  Rather, defendants contend they reasonably misunderstood the Consent Order to apply exclusively to foreign guestworkers.[5]  This reading is contrary to the plain text of the order.  Indeed, neither the term "foreign guestworker" nor any reference to H-2A or H-2B workers appears anywhere in the Consent Order.  Regardless, the Court need not find defendants' noncompliance willful to hold them in contempt.  <u>Vuitton et Fils S.A. v. Carousel Handbags</u>, 592 F.2d at 128 n.2.  In sum, the Court cannot conclude defendants acted diligently based on a reasonable or good faith interpretation regarding the scope of the termination notice provision.  <u>See, e.g.</u>, <u>Medina v. Butler</u>, 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019) (noting a defendant is not reasonably diligent if his actions directly contravene or strain the language of an order).

Accordingly, all three requirements having been satisfied, the Court holds defendants in civil contempt for their noncompliance with the Consent Order's termination notice provision.

III.     <u>Sanctions</u>

Having found defendants in contempt, the Court next considers the appropriate sanction.

---

[5]     Defendants also emphasize that the employee terminations here were not retaliatory and were unconnected to WHD's investigation.  (Doc. #64 ¶¶ 5–6; Doc. #64-1 ¶¶ 2, 4).  This is beside the point.  The Consent Order both unambiguously proscribes retaliatory discharge and, separately, also requires defendants to give WHD notice before terminating any employee.  If defendants' compliance with one term in the Consent Order could excuse their noncompliance with another, there would be no reason for the parties to have included both terms.  <u>See United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County</u>, 712 F.3d 761, 767 (2d Cir. 2013) ("Consent decrees reflect a contract between the parties . . . .  This requires that deference . . . be paid to the plain meaning of the language of a decree and the normal usage of the terms selected.").

Here, plaintiff seeks coercive sanctions.  Specifically, plaintiff requests an order requiring defendants (i) to appear personally before the Court to receive a warning about the consequences of future contumacy, including potential coercive monetary sanctions of up to $1,000 per instance; (ii) to notify plaintiff when they expect their foreign guestworker employees to arrive for the 2024 season; and (iii) to permit WHD to enter onto their worksite to advise newly arrived foreign guestworkers of their rights under the FLSA.

The Court concludes coercive sanctions are appropriate here, but it declines to order the specific measures plaintiff requests.

A.    Legal Standard

Civil contempt sanctions may be compensatory or coercive.  Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 144 (2d Cir. 2014).  In other words, the sanction must be intended to coerce future compliance with a court's order or to compensate for losses stemming from a party's past noncompliance.  Fed. Trade Comm'n v. Rensin, 687 F. App'x 3, 6 (2d Cir. 2017) (summary order).  In contrast, criminal sanctions "are intended primarily to punish the contemnor and vindicate the authority of the court."  Id.  Within the foregoing parameters, a district court is generally afforded broad discretion to protect the integrity of, and secure compliance with, its orders.  CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d at 101.

In crafting coercive sanctions, courts must consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him."  Weston Cap. Advisors, Inc. v. PT Bank Mutiara, Tbk, 738 F. App'x at 22.  Ultimately, the touchstone is whether the sanction is reasonable "in relation to the facts."  N.Y.S. Nat'l Org. for Women v. Terry, 886 F.2d 1339,

1353 (2d Cir. 1989).  Furthermore, a court may not impose a coercive sanction without giving

the contemnor an opportunity to purge his contempt by complying affirmatively with the court's

directives.  <u>Int'l Union, United Mine Workers v. Bagwell</u>, 512 U.S. 821, 828 (1994).

      B.    <u>Analysis</u>

As an initial matter, coercive sanctions are appropriate here to incentivize defendants'

compliance with all provisions of the Consent Order while this matter proceeds.  That defendants

violated an unambiguous term in the Consent Order just days after the Court issued it is

troubling.  Going forward, defendants are warned they may not base their behavior on

interpretations of the intent, purpose, or spirit of the Consent Order; they are required to comply

with its plain terms.

Further, WHD's investigation of defendants' wage-and-hour practices has concluded, so

the specter of obstruction and retaliation is now, to some extent, diminished.  However, the Court

recognizes that plaintiff may need to rely on the cooperation of defendants' former and current

employees as this litigation progresses.

On balance, the Court concludes the most effective measure to prevent future contumacy

is to ensure that defendants' employees remain apprised of their rights and recourse under the

FLSA.  To that end, by no later than June 15, 2024, defendants must permit an individual from

WHD to enter onto the Berkshire worksite to inform defendants' current employees (including

any and all foreign guestworkers) of their rights under the FLSA and how they may contact a

WHD investigator.  The parties are ordered to identify a mutually acceptable date and time for

WHD to visit the worksite, and defendants must arrange for all employees to be physically

present at that time.

Further, by no later than May 16, 2024, defendants shall mail to all current employees a hard copy of the statement attached to the Consent Order as Exhibit A, in English, Spanish, and any other language as necessary to be understood by defendants' employees.  (See Consent Order at ECF 5).  Thereafter and on an ongoing basis until otherwise ordered, defendants shall mail the statement to any newly hired employee (including any foreign guestworker) within seven days after the start of employment.  Defendants shall furnish the Acting Secretary with a signed certificate of compliance with these mailing requirements, along with the names and mailing addresses of the employees to whom the statement was sent, within three days of each applicable mailing.

In addition, to impress upon defendants the importance of compliance, they shall be required to pay a monetary fine in the event of any future contumacy.  Commencing on the date of this Order, for each subsequent violation of any provision of the Consent Order, defendants shall be required to pay a fine of $500.  Because plaintiff has not asserted loss from defendants' noncompliance, any fine shall be payable to the Clerk of Court.  See Titra Cal., Inc. v. Titra Film, 2001 WL 1382587, at *5 (S.D.N.Y. Nov. 6, 2021) ("In the absence of any loss to the complainant, any fine that may be imposed is necessarily coercive, rather than compensatory, and therefore should be made payable to the court.").

Finally, defense counsel is directed to provide a copy of this Order to defendants and any other principal of Berkshire and to discuss with them its implications and consequences.  By no later than April 30, 2024, defense counsel shall file an affirmation with the Court certifying he has done so.

The above remedial sanctions are proper because they will impose only a moderate burden on defendants but will incentivize them to abide by the Court's mandates.  Specifically,

defendants' employees will be fully apprised of their rights and equipped to contact WHD should defendants violate those rights.  In turn, defendants will face monetary penalties if any such violations come to light.  Defendants may purge their contempt and avoid these financial sanctions by fully complying with the Consent Order going forward.  See CBS Broad., Inc. v. FilmOn.com, Inc., 814 F.3d at 102 ("[R]epeated findings of contempt, with proper notice of daily prospective fees, provides the defendant with an adequate opportunity to purge.").

## CONCLUSION

The motion is GRANTED IN PART, insofar as it seeks an order holding defendants in civil contempt.  The motion is DENIED IN PART, to the extent the Court does not impose the precise sanctions plaintiff seeks.

Defendants are held in contempt of the Court's Consent Order for Preliminary Injunction dated February 6, 2023.  (Doc. #24).

It is HEREBY ORDERED that, by no later than June 15, 2024, defendants shall permit an individual from WHD to enter onto the Berkshire worksite to inform defendants' current employees (including any and all foreign guestworkers) of their rights under the FLSA and how they may contact a WHD investigator.  The parties must identify a mutually acceptable date and time for WHD to visit the worksite, and defendants must arrange for all employees to be physically present at that time.

Moreover, defendants shall:  (i) by no later than May 16, 2024, mail to all current employees a hard copy of the statement attached to the Consent Order as Exhibit A (Consent Order at ECF 5), in English, Spanish, and any other language necessary to be understood by defendants' employees; (ii) on an ongoing basis and until otherwise ordered, mail the statement to any newly hired employee (including any foreign guestworker) within seven days after the

start of employment; (iii) within three days of any mailing referenced in this paragraph, furnish to the Acting Secretary a signed certification confirming the mailing, along with the names and mailing addresses of the employees to whom the statement was sent.

For subsequent violations of any provision of the Consent Order, defendants shall be required to a fine of $500 to the Clerk, U.S. District Court, Southern District of New York. Payment may be made at the United States Courthouse, 300 Quarropas Street, White Plains, NY 10601.

It is FURTHER ORDERED that defense counsel must provide a copy of this Order to defendants and any other principal of Berkshire and discuss with them its implications and consequences.  By no later than April 30, 2024, defense counsel shall file an affirmation with the Court certifying he has done so.

The Clerk is instructed to terminate the motion.  (Doc. #54).

Dated: April 16, 2024
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge