UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JULIE A. SU, Acting Secretary of Labor,  :
United States Department of Labor,         :
                        Plaintiff,    :
v.                                                        :      **OPINION AND ORDER**
                               :
BERKSHIRE NURSERY & SUPPLY CORP.   :      23 CV 275 (VB)
and JESUS FLORES,                             :
                    Defendants.   :
--------------------------------------------------------------x

Briccetti, J:

       Plaintiff, Acting Secretary of Labor Julie A. Su, brings this action against defendants Berkshire Nursery and Supply Corp. ("Berkshire") and its president, Jesus Flores, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

       Before the Court is plaintiff's motion for leave to file an amended complaint and to join additional parties.  (Doc. #66).

       For the reasons set forth below, plaintiff's motion is GRANTED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

       The Court assumes the parties' familiarity with the factual and procedural background of this case and summarizes only the facts relevant to the pending motion.

       Berkshire is a plant and gardening-supplies business located in Patterson, New York. Berkshire both operates a retail nursery and performs off-site landscaping work for customers.

       In November 2022, the U.S. Department of Labor's Wage and Hour Division ("WHD") commenced an investigation of defendants' labor and employment practices—in particular, their compliance with the FLSA and the H-2A provisions of the Immigration and Nationality Act, 8

U.S.C. § 1101 et seq. (the "INA").[1]  In connection with this investigation, WHD visited

Berkshire's worksite and provided defendants with information about the FLSA's anti-retaliation

provisions.  According to plaintiff, shortly after the investigation commenced, defendants began

intimidating their employees, specifically instructing them "to lie or not speak to WHD's

investigators."  (Doc. #1 ¶¶ 22–29).

On January 12, 2023, while the investigation was ongoing, then-Secretary of Labor

Martin J. Walsh initiated this action.  Walsh alleged defendants obstructed WHD's investigation

and retaliated against their employees for engaging in conduct protected under the FLSA.

Shortly thereafter, the Court entered a Consent Order for Preliminary Injunction, which, among

other things, prohibited defendants from further interfering with the investigation.  (Doc. #24).

The Court also adjourned the initial case management conference and extended the parties' time

to file a proposed discovery plan while WHD's investigation proceeded.

After the investigation was complete, plaintiff indicated she intended to amend the

complaint to reflect WHD's investigative findings.  The Court set a deadline of March 15, 2024,

for plaintiff to either file an amended complaint with defendants' consent or move for leave to

amend.  (Doc. #52).  This deadline was subsequently extended by one week, and plaintiff timely

filed the instant motion and a proposed amended complaint (the "PAC") on March 22, 2024.

Plaintiff seeks leave to (i) add claims for violations of the FLSA's overtime and

recordkeeping provisions, 29 U.S.C. §§ 207, 211, and (ii) add as defendants three companies

---

[1]      The term "H-2A" refers to a visa program promulgated under the INA that allows
nonimmigrant foreign workers to enter the United States to perform temporary, seasonal labor.
H-2A visas provide admission specifically for individuals hired for temporary agricultural work.
Temporary (Nonimmigrant) Workers:  H-2A Temporary Agricultural Workers, U.S.C.I.S.
https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2a-temporary-
agricultural-workers [https://perma.cc/T5DV-BMP8] (last visited May 15, 2024).

allegedly controlled by defendant Flores:  Rosa Contracting, Inc. ("Rosa Contracting"), Rosa

Contracting and Construction, Inc. ("Rosa C&C"), and Rosa Land Tech and Design, Inc. ("Rosa

Land Tech") (together, the "Putative Defendants").[2]  Attached as Exhibit A to the PAC is a list

of employees plaintiff alleges are owed unpaid back wages and liquidated damages for the period

covered by the allegations.

**DISCUSSION**

I.    Standard of Review

A.    Rule 15

Rule 15(a)(2) provides the Court should "freely give leave" to amend a pleading "when

justice so requires."  Fed. R. Civ. P. 15(a)(2).

In the absence of factors such as undue delay, bad faith, futility, or undue prejudice to the

opposing party, "[t]he rule in this Circuit has been to allow a party to amend its pleadings."

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Foman v. Davis, 371 U.S. 178,

182 (1962).[3]

An amendment is futile when, as a matter of law, the proposed complaint would not

survive a Rule 12(b)(6) motion to dismiss.  To withstand a Rule 12(b)(6) motion, the allegations

in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible

---

[2]    According to plaintiff, defendants consent to the addition of the wage-and-hour claims
but oppose the addition of the Putative Defendants.  However, in their opposition, defendants
argue the new claim is subject to dismissal unless the Putative Defendants are joined.  In other
words, defendants consent to the addition of new claims only insofar as they believe those claims
would fail as a matter of law if the Court accepts their arguments about joinder of the Putative
Defendants.  Accordingly, the Court treats the motion as fully opposed.

[3]    Unless otherwise indicated, case quotations omit all internal citations, quotations,
footnotes, and alterations.

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

      B.    Rule 21

When a plaintiff moves to amend a complaint to add new parties, Rule 21 also applies. Chow v. Storefront Operating LLC, 2021 WL 225933, at *3 (E.D.N.Y. Jan. 20, 2021). Rule 21 provides the Court may add parties "at any time, on just terms." Fed. R. Civ. P. 21. Thus, the Court has "broad discretion to permit a change in the parties at any stage of the litigation." Four Star Cap. Corp. v. NYNEX Corp., 183 F.R.D. 91, 98 (S.D.N.Y. 1997). "[T]he same standard of liberality applies" under both Rule 15(a) and Rule 21. FTD Corp. v. Banker's Tr. Co., 954 F. Supp. 106, 109 (S.D.N.Y. 1997).

II.    Bad Faith

Defendants argue plaintiff's motion is made in bad faith because the PAC "go[es] beyond the parameters" of the underlying investigation (Doc. #69 ("Ds.' Opp.") at 3) and relies on information revealed in discovery in an unrelated case.

The Court disagrees.

"[N]ot much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading." Youngbloods v. BMG Music, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011). However, a party invoking bad faith as grounds for the denial of an amendment generally must assert more than "mere delay or inadvertence." Primetime 24 Joint Venture v. DirecTV, Inc., 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000);

State Trading Corp. of India v. Assuranceforeningen Skuld, 921 F.2d 409, 417–18 (2d Cir. 1990) (denying amendment because plaintiff waited to add certain claims until after the court made a choice-of-law determination).

Here, defendants argue Berkshire was the only subject of WHD's investigation and, therefore, plaintiff's attempt to join the Putative Defendants constitutes bad faith.  As an initial matter, defendants' assertion is factually incorrect.  Plaintiff has submitted documents indicating the Putative Defendants were subjects of the investigation from the outset.  For instance, WHD requested tax returns, pay records, and employee information from Rosa Contracting and Rosa Land Tech as early as December 2022.  (Doc. #74-1 at ECF 3).[4]  Similarly, a WHD investigator reiterated to defense counsel in March 2023 "that all businesses owned by Jesus Flores are being reviewed under the FLSA."  (Doc. #74-2 at ECF 2).  And, in any event, defendants have not explained in the first instance why plaintiff's proposed amendments need be limited to the scope of WHD's underlying investigation.

Defendants also assert the PAC improperly relies on materials produced in discovery and subject to a protective order in Alvarez v. Berkshire Nursery & Supply Corp. et al., No. 22-cv-8776 (CS) (S.D.N.Y. filed Oct. 10, 2022) ("Alvarez").[5]  This claim is speculative and not supported by any evidence.  (See Ds.' Opp. at 2).  Without more, defendants' suspicion does not permit the Court to infer bad faith simply because plaintiff is a party to the Alvarez action.  See, e.g., Blagman v. Apple, Inc., 2014 WL 2106489, at *2–3 (S.D.N.Y. May 19, 2014).

---

[4]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[5]    Alvarez is an FLSA case brought against Berkshire by private plaintiffs, but Acting Secretary Su is an intervenor and presumably may have had access to certain discovery materials.

Accordingly, defendants have not demonstrated bad faith or improper motive on plaintiff's part.

III.   Joinder of the Putative Defendants

Defendants argue the Court should deny leave under Rule 21 to add the Putative Defendants because the addition could subject the current defendants to "potential liability in a case in which they very likely have none."  (Ds.' Opp. at 4).

The Court disagrees.

A.   FLSA Coverage

Before considering whether the addition of new claims is unduly prejudicial to defendants, the Court must address in the first instance whether plaintiff's allegations would be sufficient to state a claim for wage-and-hour violations against Berkshire if the Putative Defendants are added.

1.   Legal Standard

Under the FLSA, any employee who either (i) "is engaged in commerce or in the production of goods for commerce" or (ii) "is employed in an enterprise engaged in commerce or in the production of goods for commerce" is entitled to minimum and overtime wages. 29 U.S.C. §§ 206(a), 207(a).  These two categories are often referred to as "individual coverage" and "enterprise coverage," respectively.  Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 96–97 (2d Cir. 2009).

Plaintiff has alleged an "enterprise coverage" theory of liability.  (See Doc. #67-1 ("PAC") ¶¶ 56–73).  An enterprise is "engaged in commerce or in the production of goods for commerce" if:  (i) it "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials

that have been moved in or produced for commerce by any person" <u>and</u> (ii) its "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1).

"Once the requirement of an 'enterprise' is satisfied, liability under the FLSA extends to any 'employer.'" <u>Gordon v. Gen. Prop. Mgmt. Assocs.</u>, 496 F. Supp. 3d 830, 836 (S.D.N.Y. 2020).  "Employer" under the statute "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  This definition is purposively broad and should be liberally construed "to accomplish the statute's goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 103 (2d Cir. 2013).

In sum, to state a wage-and-hour claim against Berkshire, plaintiff would need to plausibly allege Berkshire was both an "employer" of the individuals owed back wages and an "enterprise engaged in commerce."

### 2.   <u>Analysis</u>

Berkshire, standing alone, does not meet the annual gross revenue requirement and therefore is not by itself an enterprise engaged in commerce.  Thus, plaintiff cannot state a claim for overtime or recordkeeping violations against Berkshire on its own.  However, plaintiff has plausibly alleged Berkshire and the Putative Defendants are so closely integrated they should be treated together as a single employer for FLSA purposes.

Courts sometimes apply the "single employer" doctrine in situations where "a group of distinct but closely affiliated entities" is best understood as a single integrated enterprise. <u>Juarez v. 449 Rest., Inc.</u>, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).[6]  Within a single integrated

---

[6]     The single employer doctrine is an outgrowth of Title VII cases, and the Second Circuit has never expressly endorsed it in the FLSA context. <u>Syed v. S&P Pharm. Corp.</u>, 2023 WL 2614212, at *2 (E.D.N.Y. Mar. 23, 2023).  However, courts in this Circuit increasingly apply the

enterprise, any entity, not just the nominal employer, is subject to joint and several liability for labor law violations.  Griffin v. Sirva, Inc., 835 F.3d 283, 292 (2d Cir. 2016).  Similarly, the gross sales of each entity within an integrated enterprise may be aggregated to determine whether the requirements for enterprise coverage have been met.  Shin Ming Chen v. Hunan Manor Enter., Inc., 2023 WL 5574854, at *5 (S.D.N.Y. Aug. 29, 2023).

In evaluating the existence of a single integrated enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Juarez v. 449 Rest., Inc., 29 F. Supp. 3d at 367.  "Although no one factor is determinative[,] control of labor relations is the central concern."  Griffin v. Sirva, Inc., 835 F.3d at 292.  "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."  Brown v. Daikin Am., Inc., 756 F.3d 219, 226 (2d Cir. 2014).

Here, plaintiff has adequately alleged Berkshire, Rosa Contracting, Rosa C&C, and Rosa Land Tech (together, the "Flores Group") constitute a single integrated enterprise.  According to the PAC, defendant Flores is the principal of each company, and he set wages, schedules, and policies for employees doing work across the Flores Group.  Plaintiff alleges Flores recruited and

---

doctrine to identify employment relationships in FLSA cases involving closely related business entities.  Flores v. 201 W. 103 Corp., 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (collecting cases); Yu Wei Cao v. Miyama, Inc., 2019 WL 4279407, *7 (E.D.N.Y. 2019).  Bearing in mind the Second Circuit's instruction "to treat employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis," the undersigned joins those Courts which have found it appropriate to analyze FLSA claims under a single employer theory.  Irizarry v. Catsimatidis, 722 F.3d at 104; see also Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985) ("The Court has consistently construed the [FLSA] liberally to apply to the furthest reaches consistent with congressional direction.").

hired temporary, nonimmigrant workers who performed labor interchangeably among the companies.  For instance, even when Flores hired H-2A workers ostensibly to perform agricultural work for Berkshire, the employees allegedly did landscaping and construction work at jobsites run by other Flores Group companies.  Plaintiff also alleges the Flores Group companies shared equipment, such as trucks and lawn mowers; performed services and provided supplies for one another; and pooled their administrative resources, including legal, accounting, and payroll operations.  Although some of plaintiff's allegations are less than fully developed, at this early stage, she has alleged sufficient facts to plead the existence of a single integrated enterprise.  See, e.g., Nieto v. Vill. Red Rest. Corp., 2017 WL 6398635, at *2 (S.D.N.Y. Nov. 22, 2017); Flores v. 201 W. 103 Corp., 256 F. Supp. 3d at 441–42.

When the alleged annual gross sales of the Flores Group companies during the relevant period are aggregated, the revenue requirement for enterprise coverage is satisfied.  (PAC ¶¶ 70–72).  The interstate commerce requirement is also met because Flores Group employees allegedly handled, worked on, or sold goods or materials produced for or moved in interstate commerce, including plants purchased outside of New York state.  (Id. ¶ 73); Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998) ("[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods that have moved or been produced in interstate commerce.").  In sum, plaintiff has plausibly alleged the Flores Group— and therefore Berkshire—is subject to enterprise coverage and may be liable for overtime and recordkeeping violations.

Accordingly, the PAC adequately alleges wage-and-hour claims against Berkshire, as part of the Flores Group.

B.    <u>Prejudice from Joinder</u>

Having concluded plaintiff's allegations are adequate to state a claim for wage-and-hour violations against Berkshire if the Putative Defendants are added, the Court considers whether the addition of these new claims is unduly prejudicial to defendants.

Amendment to add new claims "is not normally prejudicial unless the opposing party would be confronted with some unique difficulty in defending against the new issues." <u>Duling v. Gristedes Operating Corp.</u>, 265 F.R.D. 91, 102–03 (S.D.N.Y. 2010).  For example, when the addition of claims or parties may lead to renewed motion practice, jurisdictional issues, or substantial additional discovery, amendment may be sufficiently prejudicial to warrant denial of leave.  <u>See, e.g.</u>, <u>AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.</u>, 626 F.3d 699, 725–26 (2d Cir. 2010); <u>In re Am. Int'l Grp., Inc. Sec. Litig.</u>, 2008 WL 2795141, at *3–4 (S.D.N.Y. July 18, 2008).

Here, the case is still at an early stage—no dispositive motions have been filed and the Court has stayed fact discovery deadlines pending its ruling on the instant motion.  (Doc. #77).  Moreover, defendants have had notice since at least April 2023 of plaintiff's intention to assert additional claims based on the results of WHD's "ongoing" investigation.  (<u>See, e.g.</u>, Doc. #32 at 2).  Indeed, the Court granted adjournments and extensions of case deadlines for the parties to pursue a global resolution of the anti-retaliation and anticipated wage-and-hour claims.   (<u>See, e.g.</u>, Doc. #49).  These facts cast doubt on the assertion that joinder of the Putative Defendants would force defendants to now "alter their entire defensive strategy."  (Ds.' Opp. at 4).

Moreover, if leave to amend were denied, plaintiff would be free to file a separate action, which would be inefficient when the existing and proposed claims share many operative facts. <u>Covet & Mane, LLC v. Invisible Bead Extensions, LLC</u>, 2023 WL 2919554, at *14 (S.D.N.Y.

Mar. 23, 2023).

Accordingly, defendants have not demonstrated prejudice warranting the denial of leave to add new parties.[7]

IV.    Duplicative Litigation and Primary Jurisdiction

Defendants argue amendment would be prejudicial because they would be forced to litigate the alleged wage-and-hour violations in two different fora—both in this Court and in an agency proceeding before an administrative law judge (an "ALJ").

The Court disagrees.

Section 216(e) of the FLSA (and its implementing regulations) permits plaintiff to impose a civil money penalty on any person who engages in repeated or willful violations of the Act's wage-and-hour provisions.  29 U.S.C. § 216(e)(2); 29 C.F.R. § 580.3.  If a party challenges the penalty by timely filing an exception with WHD, the case is reviewed by an ALJ.  29 C.F.R. §§ 580.10–11.  The ALJ is authorized only to determine whether the party in fact committed a repeated or willful violation and, if so, the appropriateness of the penalty.  Id. § 580.12.  Here, plaintiff assessed a civil money penalty against defendants based on the results of WHD's investigation.  On March 11, 2024, defendants filed an exception challenging, in part, the finding that they violated the FLSA's overtime provisions.

Defendants argue leave to amend should be denied because (i) permitting the adjudication of the same wage-and-hour claims in two different actions implicates the rule against claim-splitting and duplicative litigation; and (ii) under "principles of comity and the

---

[7]    Because the Court finds plaintiff has adequately alleged a single integrated enterprise and joinder of the Putative Defendant is appropriate, it need not address plaintiff's suggestion that she could proceed on her wage-and-hour claims without adding the Putative Defendants.  (See Doc. #67 at 9 n.2).

primary jurisdiction doctrine," leave should be denied so the administrative process may "proceed unhindered by this litigation."  (Ds.' Opp. at 6).  Neither argument is availing.

A.   Claim-Splitting and Duplicative Litigation

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."  Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000).  This rule against duplicative litigation, also referred to as the claim-spitting doctrine, derives from the principle that "a plaintiff has no right to maintain two actions on the same subject matter in the same court, against the same defendant at the same time."  Sacerdote v. Cammack Larhette Advisors, LLC, 939 F.3d 498, 504 (2d Cir. 2019).  For the rule to apply, the two actions must involve the same parties, the same rights, and the same relief.  Id. Moreover, "[t]he relief must be founded upon the same facts," and the "essential basis" for the relief must be the same.  Id.

Such is not the case here.  First, these two actions are pending in different fora, under different statutory authority.  As the Second Circuit has explained, litigation generally is not duplicative in cases "involving the contemporaneous exercise of concurrent jurisdictions." Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 92 (2d Cir. 2013).  Second, the two actions do not involve the same relief.  The administrative proceeding concerns a statutory penalty plaintiff is authorized to assess pursuant to Section 216(e), separate and apart from any judicial action for damages.  In contrast, the PAC seeks injunctive relief, liquidated damages, and back wages—relief the ALJ cannot order. Accordingly, the two actions are not duplicative.

Relatedly, defendants have offered no authority—and the Court is aware of none—for the proposition that the proposed amendment would be "nullified" if the ALJ finds in defendants'

favor.  (Ds.' Opp. at 5).  As an initial matter, defendants have not demonstrated the administrative determination would have a preclusive effect in this litigation.  Whether an agency decision can ground issue preclusion in a related judicial action implicates complex questions of law and fact.  B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 148–49 (2015).  The Court finds it inappropriate to address this issue on a motion for leave to amend, particularly when defendants have not made any meaningful legal argument on the point.

In any event, the ALJ's review is limited to whether defendants committed a willful or repeated violation of the wage-and-hour provisions.  29 C.F.R. § 580.12.  Although willfulness ultimately may bear on the award and/or calculation of liquidated damages, plaintiff need not prove defendants acted willfully to hold them liable for wage-and-hour violations in the first instance.  See Perry v. City of New York, 78 F.4th 502, 521 (2d Cir. 2023).  Accordingly, the possibility of an administrative finding in defendants' favor is not a reason for denial of the proposed amendment.

B.    Primary Jurisdiction Doctrine

Defendants next argue this Court should deny leave to amend pursuant to the primary jurisdiction doctrine.

Primary jurisdiction is a prudential doctrine which permits a court, under appropriate circumstances, to refer a matter to a relevant agency.  Nat'l Commc'ns Ass'n v. Am. Tel. & Tel. Co., 46 F.3d 220, 222–23 (2d Cir. 1995).  "For a court to invoke the primary jurisdiction doctrine, it must determine that the agency, not the courts, should have the initial decisionmaking responsibility."  Palmer v. Amazon.com, Inc., 51 F.4th 491, 505 (2d Cir. 2022). "[O]nce a court determines that the doctrine applies, it has discretion either:  (1) to retain jurisdiction," and stay the case pending an appropriate administrative proceeding, "or (2) to dismiss the case without

prejudice."  Id.

There are four nonexclusive factor courts in this Circuit weigh when considering

invoking primary jurisdiction:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

Ellis v. Tribune Television Co., 443 F.3d 71, 82 (2d Cir. 2006).

Here, there is no basis for the Court to deny leave to amend based on the primary

jurisdiction doctrine.  This is a straightforward FLSA matter of the kind district courts regularly

adjudicate.  Defendants have identified no issue in this case which is beyond ordinary judicial

competence or requires special agency expertise.  Accordingly, to the extent it would be grounds

for denying the instant motion, the Court will not apply the primary jurisdiction doctrine.  See

White v. Beech-Nut Nutrition Co., 2024 WL 194699, at *1 (2d Cir. Jan. 18, 2024) (summary

order) (noting the primary jurisdiction doctrine is a narrow exception to the federal courts'

"virtually unflagging obligation to exercise the jurisdiction given them.").

## CONCLUSION

Plaintiff's motion for leave to file an amended complaint and to join additional parties is

GRANTED.

The amended complaint shall be filed by May 24, 2024.  Defendants shall file an answer

by June 14, 2024.

Pursuant to the Court's Order dated April 30, 2024, the parties shall submit a proposed

revised Civil Case Discovery Plan and Scheduling Order by June 3, 2024.  (Doc. #77).

By Order dated February 14, 2024, the parties were directed to submit, by May 14, 2024, a joint status report regarding settlement.  (Doc. #52).  To date, they have not done so.  Accordingly, the Court <u>sua</u> <u>sponte</u> extends to June 3, 2024, the parties' deadline to file a joint status report.

The Clerk is instructed to terminate the motion.  (Doc. #66).

Dated:  May 20, 2024
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge